**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**
**CASE NO.:** 9:12-CV - 1740-SB-BM

| | | |
|---|---|---|
| KEITH FERGUSON, | ) | |
| 112 ROADSIDE DRIVE | ) | |
| YEMASSEE, SC 29945 | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAFFLE HOUSE, INC. | ) | **COMPLAINT (EMPLOYMENT-** |
| 5986 FINANCIAL DRIVE | ) | **FEDERAL QUESTION)** |
| NORCROSS, GA. 30071 | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendant. | ) | |

TO:    THE DEFENDANT ABOVE NAMED:

**I.NATURE OF THE ACTION**

1. This claim is brought by Plaintiff to challenge the existence of discrimination, breach of contract and retaliation committed against the Plaintiff by Waffle House, Inc. The violation suffered by the Plaintiff occurred at the Waffle House Inc. locations at 5986 Financial Drive, Norcross, GA. 30071, 4310 Augusta Rd. and Highway 21, Garden City, Georgia 31408, Highway 17 and I-95, PO Box, 728, Hardeeville, South Carolina and Point South, South Carolina, where Plaintiff was assigned during his employment.

2. Defendant's corporate offices are located at Waffle House Inc.,5986 Financial Drive Norcross, GA. 30071

3. The Defendant's unlawful policies and practices have had the effect of and have been undertaken with the purpose of discriminating and retaliating against the Plaintiff and of creating a hostile and discriminatory environment all in violation of 42 USC 1981, Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the South

Carolina Human Affairs laws, as well as the Common Laws of South Carolina.

4. The Plaintiff, Keith Ferguson, a resident of Yemassee, South Carolina, is an African

American Male, over 40 years of age, and as such he is the member of a protected class.

The employer, Waffle House. Inc. qualifies as an employer under the above-referenced

statutes in paragraph 3.

## II. JURISDICTION AND VENUE

5. Plaintiff seeks damages under a Federal Cause of Action, 42 USC 1981 and 42 U.S.C. §§

2000e, et seq., as amended, and, further, seeks relief and an award of damages pursuant

to the common and statutory laws of the State of South Carolina.

6. The actions complained of took place in Jasper County as well as several other South

Carolina Counties including Hampton County where the Plaintiff resides.

7. This Division of the Court and the witnesses are believed to be within 100 miles of the

Courthouse.

8. Plaintiff is African American and over 40 and therefor is a member of a protected class as

required by Title VII.

9. The Defendant is a Corporation employing over 50 individuals and therefore qualifies as

an employer under the relevant Federal Statutes.

10. Given the foregoing Plaintiff asserts that jurisdiction and venue are appropriate in this

Court.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff, Keith Ferguson, after numerous in house complaints to his employer and Mark

Anderson, his Division Manager, and his superiors, timely filed an allegation of

discrimination, and retaliation, with the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission, alleging that he had been discriminated against on the basis of his race. He also claimed that he had been retaliated against for engaging in protected activity under the relevant statutes, state law and company policy.

12. Plaintiff received from the Equal Employment Opportunity Commission on March 30, 2012 a notification of results of their investigation dated March 27, 2012, entitling him to commence an action within 90 days of receipt of the notice.

13. The EEOC issued a "no-finding" Notice at that time.

14. The claims presented by the Plaintiff are timely as he is filing suit within 90 days of the receipt of the notice of the right to commence action and submits that he has satisfied all private administrative and judicial pre-requisites to the institution of this action.

## IV.PARTIES

15. The defendant Waffle House Inc., ( hereinafter Waffle House) upon information and belief, is, and at all times hereinafter mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of Georgia.  Waffle House, Inc. maintains restaurants offices in the United States and in South Carolina including in South Carolina, Hardeeville, SC, Jasper County and  Point South, SC also in Jasper County.

16. Defendant, Waffle House, is an employer having over 50 employees and as such has over the jurisdictional limits for employees required by the applicable and relevant federal statutes.

17. At all relevant times Defendant has continually done business in the State of South Carolina, in numerous counties.

**18.** The Plaintiff Keith Ferguson at all times herein after mentioned, was and still is a resident of South Carolina, County of Hampton, specifically residing at 112 Roadside Drive, Yemesssee, South Carolina 29945.  He has been employed with the defendant company on two different occasions most recently in 2011, earning a base salary of approximately $35,000.00 per year.

## V.  STATEMENT OF FACTS

19. Upon information and belief the Defendant, hereinafter Waffle House. Inc., is an national employer engaged in the food and beverage industry and having numerous Corporately owned and operated restaurants in the South Carolina and Georgia areas, all within one corporate region.

20. The region was at that times relevant herein over seen by Mark Anderson, black male. Mr. Anderson has since been replaced by a white male.

21. Plaintiff's District Manager was Suzanne Maloney, a white female.

22. The Vice President over Mr. Anderson's Region was Randy Coleman, a white male.

23.  Plaintiff was employed by the Defendant for 12 years and then was promoted to the position of Management Trainee in August 2010.

24. Plaintiff entered a contractual employment arrangement with Waffle House, Inc. where he performed work in exchange for salary, benefits and bonuses.

25. The terms and conditions of Plaintiff's employment were, in addition to the wage for service contractual agreement, embodied within Defendant's policies and procedures, Handbooks, Management Training documentation and through oral statements made to Plaintiff by Management.

26. The Handbook, upon information and belief had a progressive disciplinary policy.

27. The Defendant offered to pay Plaintiff to perform certain duties and responsibilities and Plaintiff accepted the offer, and performed the duties, creating a contract for employment.

28. Pursuant to his employment agreement Plaintiff expected to be treated the same as Caucasian employees, having the same terms, conditions and opportunities.

29. Relevant to this matter, Plaintiff worked in 2010 for Waffle House, Inc. at Defendant's Savannah International Airport location, in a management capacity.

30. The location near the Airport was a newer facility, with well functioning equipment and a predominantly Caucasian staff.

31. Upon information and belief the staff was dominantly Caucasian, with one African American male cook and one female Latin American waitress, and Plaintiff.

32. Plaintiff was separated from the Airport location, under the pretense of his having staff difficulties related to Plaintiff's dealings with the Caucasian Staff.

33. Plaintiff submits that he was a good manager and that the Airport store was doing well.

34. As a newer store with new and functioning equipment, the Airport location was desirable and Plaintiff had the potential earn a substantial amount in income and bonuses as a manager.

35. Plaintiff was reassigned to the Point South, South Carolina store, an older location with a predominantly African American Staff.

36. The Plaintiff was replaced with a Non-African American at the Airport location.

37. The Point South, SC store was beset with staffing and equipment issues.

38. The Point South Store was a less profitable store than the Airport location.

39. The Point South store was at the time ranked at the bottom of Defendant's Corporate rankings for the region.

40. Plaintiff's reassignment was essentially a demotion, or negative employment action.

41. In the approximately 2 months that the Plaintiff was involved in managing the Point South store he was able to achieve improvements and more profitability.

42. Pursuant to the Defendant's policies, Plaintiff complained regarding his assignment to the less desirable older store with the mostly African-American staff to his supervisors and the Senior Vice President Randy Coleman. He also spoke to an Executive Vice President regarding his concerns of unequal treatment as an African American Manager with regard to the assignments. These discussions, upon information and belief occurred at in late 2010 and early 2011.

43. Plaintiff also contacted the Associate EEO Hotline regarding his complaints about the reassignment from the newer, well functioning "White" Waffle House to an older store, with a predominantly African American staff, with equipment that was aging and in need of more repair, and how this deprived him of opportunities, as an African American manager, that Caucasians were being given.

44. Plaintiff specifically discussed the "Black" store vs. "White" store issue at length with regional Manager Mark Anderson.  Anderson acknowledged the existence of the dichotomy and the problems at the Point South Store.

45. Upon information and belief the assignment of Plaintiff based on race deprived him of significant income and opportunities, and such was specifically discussed with Anderson.

46. Plaintiff resigned from the Defendant's employment in April 2011 specifically due to the Defendants lack of response to the allegations of racial disparity in opportunity.

47. Subsequently it came to the Plaintiff's attention that there was a job opportunity with the Defendant to manage a new store opening in Georgia.

48. As Plaintiff had the necessary background and the essential training and contacted Mark Anderson.

49. Anderson, upon information and belief, arranged for Plaintiff's rehire in July 2011, under the same or similar conditions of employment as set forth in Paragraph 23-27, except that Plaintiff was hired at $35,000.00 per year plus bonuses and benefits, as an associate manager.

50. As part of the agreement to return to employment Plaintiff was promised by Anderson assignment to the new Georgia store. This was a new store, in a good location with potential for growth, good income and bonuses. He was also promised an increase in salary.

51. After being employed for several weeks and making several trips to the new location, it came to Plaintiff's attention that the restaurant was being staffed by others, with all Caucasion workers.

52. He brought this to the attention of his superiors, sighting the prior allegations of discrimination and his concern with the diversity.

53. Plaintiff was advised by the Defendant that he would be inappropriate for the new store because he was "black" and "would not fit in" to a store in an all "white" area.

54. In addition Plaintiff, upon information and belief, and based upon his conversations with Mark Anderson, Plaintiff was being assigned to a predominantly African American store based upon his race and impermissible bias that presumed that a "black" managers should manage "black" workers and not "white" workers.

55. Plaintiff was instructed not to travel to the Georgia store again.

56. Plaintiff was then advised that he would not be working at the new store but could be assigned to the Hardeeville, SC or Garden City, GA. Location.

57. The Garden City and Hardeeville stores where (like Point South) lower performing, older stores, with predominantly African American staff, and having staff and equipment problems.

58. Plaintiff, upon information and belief was being assigned to these stores in retaliation for calling to the Defendant's attention the racial makeup of the new Georgia store, objecting to not being permitted to work at the "Caucasion" store and because of his race and color.

59. Plaintiff was also offered less salary to take the positions at the old stores, than was promised  as salary at the new Georgia store.

60. Retaliation and impermissibly considering race in assignments, terms and conditions of employment is prohibited by Defendant's policies and procedures.

61. Despite Plaintiff's renewed complaints about race and discrimination, the Defendant, as in late 2010 and earlier in 2011, did nothing regarding the allegations of unequal treatment.

62. In contravention with Defendant's policies and procedures Waffle House refused to remedy the situation, or comply with its agreement with Plaintiff to give him management of the Georgia store.

63. Plaintiff was terminated 9/17/2011 for alleged insubordination with regard to failing to accept the less desirable positions at the predominantly African American stores.

64. Upon information and believe the termination was at least in part in retaliation for his complaints about race, being assigned to less profitable and problematic stores with

mostly African American staff and for seeking the benefit of several Federal and state statutes.

65. Plaintiff filed a charge with the EEOC and the South Carolina Human Affairs Commission shortly thereafter.

## VI. FOR A FIRST CAUSE OF ACTION
### (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. And the South Carolina Human Affairs Law)

66. That the allegations of paragraphs 1 through 65 above are realleged as if fully set forth herein verbatim.

67. Defendants' policies on Equal Access and Opportunity disallow discrimination based on race and color, including where it has the effect of creating a hostile and offensive work environment.

68. Defendant's policies and procedures also disallow other forms of racial, religious, and sexual discrimination.

69. Upon information and belief, the Defendant's policy's forbid discrimination in all areas of employment, while guaranteeing that complaints of all employees will be given equal consideration and unbiased treatment.

70. The above circumstances as described are sufficiently severe and pervasive as to alter the conditions of Plaintiff's employment and create a working environment which is abusive, intimidating, and discriminatory against black and African American employees including the Plaintiff.

71.  The work atmosphere described above constitutes a hostile environment under Title VII and the South Carolina Human Affairs laws as a reasonable person would find the circumstances to Defendants actions herein discriminated against Plaintiff by engaging in, tolerating and/or failing to prevent discrimination and retaliation and by failing to take affirmative action to correct and redress the complained of unlawful employment practices.

72. In addition to creating a hostile work environment, Defendants' acts and omissions alleged herein constitute discrimination against black and African American workers and the Plaintiff in particular with respect to the terms, conditions and/or privileges of employment because of color and race, in violation of 42 U.S.C. §§2000e, et seq and the South Carolina Human Affairs Laws.

73. Plaintiff notified the employer of his objection to discriminatory assignments, and racial bias and hostile environment as required by the Defendant Employer's policies. Such constituted protected actions.

74. No action was taken by the Defendant to investigate any of Plaintiff's allegations of inequity in the work place.

75.  That as a result of the Defendant's unequal treatment and eventual termination, Plaintiff was has suffered mental distress, loss of income and benefits, has been unable to obtain employment at a commensurate salary and has incurred costs and attorneys fees and suffered other actual and punitive damages.

As such Plaintiff seeks damages as set forth below.

## VII. FOR A SECOND CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. 1981

76. That the allegations of paragraphs 1 through 76 above are realleged as if fully set forth herein verbatim.

77. An employment relationship is by nature contractual.

78. Plaintiff was employed by the Defendant

79. 42 USC 1981 guarantees that Black citizens be treated equally in contractual matters as Caucasion.

80. Plaintiff has not been treated in the same manner as Caucasion employees.

81.  Defendant has discriminated against Plaintiff in violation of 42 U.S.C.  1981 by and through their actions, as set forth above, including through  denying African-American employees, specifically Plaintiff, with equal terms and conditions of employment to White/Caucasian employees.

82. As a result of the same Plaintiff has suffered damages and seeks remedy as set forth below.


## VIII.  FOR A THIRD CAUSE OF ACTION
## (Unlawful Retaliation as to Plaintiff-
## Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e and 42 USC 1981)

83. That the allegations of paragraphs 1 through 83 above are realleged as if fully set forth herein verbatim.

84. Plaintiff herein "opposed" the described unlawful conduct and utilized the Defendant's EEO complaint procedure, put in force by Defendant to ensure compliance with Title VII, and to protect members of Plaintiff's protected class.

85. Plaintiff made complaints against the Defendant using its internal mechanisms, the EEO system and relevant policies and procedures, based upon the discrimination in the terms and conditions of employment, as set forth above.

86. That in retaliation for Plaintiff's internal complaints under the Title VII and the South Carolina Human Affairs Act he was subject to negative employment actions, including prejudicial assignment to less desirable stores and eventual termination.

87. The employer via retaliation as described, encourages discrimination via intimidation and fear of retribution, and blocks access to Defendant's EEO system.

88. The conduct alleged herein violates 42 U.S.C. §§2000e, the South Carolina Human Affairs Laws and the public policy of this state and the United States, as Defendant actions constitute adverse employment actions against Plaintiff in retaliation for Plaintiff's exercise of and participation in protected activity, and his opposition to unlawful practices.

89. That as a result of Defendant's actions, Plaintiff continues to suffer damages for seeking to enforce his rights, including through a loss of income.

90. As such Plaintiff prays for awards of actual and punitive damages from the triers of fact against the Defendant in amounts that are fair and just.

## IX. FOR A FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT

91. Plaintiff repeats and re-alleges the factual allegations set forth above as if set forth verbatim herein.

92. During Plaintiff's employment defendant issued or had in force employee handbooks and manuals which were available to all employees.  The handbooks altered Plaintiff's employment status as they contained explicit promises regarding the terms and conditions of employment.  The handbooks contained promissory language.  Accordingly, the handbooks create a contract of employment between the Plaintiff and the defendant.

93. Among other things the handbooks promise that the defendant will in fact provide equal employment opportunities without regard to race and color; will investigate allegations of improper behavior and will fairly, will completely and discretely investigate said complaints and will not tolerate retaliation against employees who utilize the complaint system.

94. Defendant's handbook and other policies constitute a mandatory procedure.

95. Upon information and belief defendant's handbook and other policies contained promissory language ensuring equal treatment of all employees not only within the workplace but with regard to the handling of personnel matters.

96. Defendant's handbook also contained a progressive disciplinary scheme which was not adhered to with regard to Plaintiff's termination.

97. Upon information and belief such procedures are binding up the defendant and constitute a contract.

98. Defendant's conduct set forth above breached the provisions of the defendant's handbook, policies and procedures.

99. As a direct and proximate result of the defendant's breach of its policies and procedures Plaintiff has suffered damages.

100.    In addition to the being in breach of Defendants written policies and procedures Plaintiff was offered and accepted employment as the Manager of the new Georgia Store and a raise for the position.

101.    Defendant breached that agreement by trying to reassign Plaintiff to a less desirable, less profitable, and older store once he was reemployed.

102.    As a result of the breach of that agreement Plaintiff has suffered significant damages.

WHEREFORE, Plaintiff prays that this Honorable Court award Plaintiff actual, punitive, and consequential damages against the, in amounts that are just and fair as determined by the triers of fact; for attorneys fees and the costs of bringing this action; and for further relief as may be just and proper upon each of the causes of action set forth above.

Respectfully Submitted,

JENNIFER MUNTER STARK, ESQ

By: S/ Jennifer Munter Stark
Jennifer Munter Stark, Esquire
Federal Bar No: 9364
501 Folly Road (29412)
Charleston, South Carolina
(843) 795-2525; (843) 795-2545 (f)
jmunterstarklaw@gmail.com

**LAW OFFICE OF ASHLEY AMEIKA, LLC**
<u>**s/ Ashley Ameika**</u>
Federal Bar No.  10417
7555 Northside Dr.
North Charleston, SC 29420
843-820-9719  fax 843-820-9720

Dated: June 25, 2012                    ***Attorneys for Plaintiff***
In Charleston, South Carolina