IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT  DIVISION

| | | |
|---|---|---|
| **Keith Ferguson**, | ) | Civil Action No.  9:12-1740-SB-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Waffle House Inc.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This action has been filed by the Plaintiff pursuant to, inter alia, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and 42 U.S.C. § 1981.  Plaintiff, a former employee of the Defendant, asserts claims of discrimination under the cited statutes.  Plaintiff also asserts a state law claim for breach of contract.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 18, 2013.  After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on August 20, 2013, following which the Defendant filed a reply memorandum on September 13, 2013. The Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.  The Defendant has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



### Background and Evidence[2]

The Plaintiff is an African-American who has worked for the Defendant Waffle House at different times over a course of years. Plaintiff initially worked for the Defendant for several years in the early 1990s as a grill operator, before he went to college. <u>Plaintiff's Deposition</u>, pp. 48-49. In September 2010, Plaintiff was rehired by the Defendant as a Manager Trainee. <u>Plaintiff's Deposition</u>, p. 58; <u>Anderson Deposition</u>, p. 31. Plaintiff's supervisor was Division Manager Mark Anderson, also an African-American. <u>Plaintiff's Deposition</u>, pp. 58-59. Anderson testified that the Defendant hires "based on the best eligible candidate", and does not hire on the basis of "color or nationality". <u>Anderson Deposition</u>, pp. 54-55.

Plaintiff was initially assigned as a Manager Trainee to the Waffle House restaurant in Beaufort, South Carolina. <u>Plaintiff's Deposition</u>, p. 75. After about twelve weeks, Plaintiff was transferred to the Savannah Airport restaurant, where he continued his training. <u>Plaintiff's Deposition</u>, p. 76. The Savannah restaurant did not have a manager (also called a "Unit Manager"] at that time, so Plaintiff reported to Marc Thibodeau (white), the District Manager for the district that included the Savannah restaurant. <u>Plaintiff's Deposition</u>, pp. 76, 79, 110. Thibodeau reported to Anderson, the Division Manager. <u>Plaintiff's Deposition</u>, pp. 65-66, 110. Plaintiff did not like the way the Savannah Airport store was run and testified that the subordinates there disrespected him. <u>Plaintiff's Deposition</u>, p. 90. When the previous Unit Manager for the Savannah restaurant (a lady named "Angie") called Plaintiff to see how things were going, Plaintiff told her he had some concerns, following which Anderson and Paxton Green (African-American), the area Vice President,

---

[2]The facts and evidence are considered and discussed herein in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).



met with Plaintiff the next day.  <u>Plaintiff's Deposition</u>, p. 93.  Plaintiff complained that Thibodeau was discriminating against him on the basis of race, and testified that he told Anderson and Green that he wanted to be successful working for the Defendant, but that he was also considering going into the military to pursue a career.  He also told Anderson and Green that he was unhappy with the commute to the Savannah Airport store from his residence in Yemassee, South Carolina.  <u>Plaintiff's Deposition</u>, p. 94-95;[3] <u>see</u> <u>also</u>, <u>Anderson Deposition</u>, pp. 105, 133.

   On January 15, 2011, Plaintiff called the Defendant's Associate Hotline to complain about the way he was being treated by his coworkers at the Savannah Airport location, following which he submitted a four page letter dated January 21, 2011, setting forth his concerns.  <u>Plaintiff's Deposition</u>, Exhibit 6.  Plaintiff complained in this letter about how he was treated by Thibodeau, who Plaintiff said yelled and was rude and disrespectful, and inferred that the staff at the restaurant treated white and black customers differently.  Plaintiff also complained that during his meeting with Anderson and Green, that Green had tried to intimidate him and make him feel guilty.  Plaintiff further states in this letter that, subsequent to his meeting with Anderson and Green, he was told by Green and Anderson on January 16, 2011 that Leslie Carson (white) was being assigned to the Savannah store to be the Unit Manager.  Plaintiff states that when Carson showed up on January 18, 2011, she was "very disrespectful and very unprofessional".  Plaintiff also states that he told Anderson that he would not feel comfortable working in any Waffle House that Thibodeau helped run.  <u>Plaintiff's Deposition</u>, Exhibit 6.

   The Defendant investigated Plaintiff's complaint, but advised Plaintiff that they did

---

[3]Plaintiff conceded, however, that even though the Defendant had provided him with moving expenses to help him relocate closer to the Savannah Airport restaurant, he had never moved.  <u>Plaintiff's Deposition, p. 105</u>.



not find sufficient evidence of any discrimination.  Plaintiff's Deposition, p. 131.  Anderson testified that the reason Carson was sent to the Savannah Airport restaurant was because she was a former manager and because of Plaintiff's complaint about his commute; Anderson Deposition, pp. 104-105; and when Plaintiff was asked at his deposition whether he believed the way he was treated at the Savannah Airport restaurant was because of his race, Plaintiff recounted a story about an unidentified lady who had quit, which does not really deal with race, and the point of which is unclear.  Plaintiff's Deposition, pp. 90-91.

Plaintiff was then transferred from Savannah to the Point South restaurant location, which was closer to Plaintiff's home.  Further, Plaintiff was made the Unit Manager for that store. Anderson Deposition, pp. 105-106.  Plaintiff testified that he had no problem being reassigned to the Point South restaurant.  Plaintiff's Deposition, p. 133.  Plaintiff's pay remained the same, and he also acknowledged this transfer was not any form of discipline or demotion.  Plaintiff's Deposition, pp. 104-105.  However, following his transfer to Point South, Plaintiff began having problems at that store as well.  The District Manager for the Point South store was Suzanne Maloney [white], while the racial makeup of the Point South restaurant was predominately African-American, and Plaintiff testified that the African-American employees treated Maloney better than they treated him, which he attributed to some African-Americans feeling that another African-American should not be in a position of authority over them.  Plaintiff testified that when he mentioned this perception to Anderson, Anderson attributed it to Maloney having "been here longer".  Plaintiff also testified that he saw a white employee put some money in her pocket, and that when he raised this issue with Anderson, Green and Maloney, the employee was transferred to another position but not fired. Plaintiff further testified that the staff at the Point South store retaliated against him by treating him



4

poorly or disrespectfully.  See generally, Plaintiff's Deposition, pp. 134-140.

In May 2011, Plaintiff sent a letter to the Defendant resigning his employment effective June 15, 2011.  Plaintiff's Deposition, Exhibit 9.  Plaintiff listed a number of complaints in his letter for why he was resigning, but did not reference racial discrimination as being a reason for his resignation.  Id.  After about a month, however, Plaintiff reconsidered his decision and spoke with Anderson about coming back to work for the Defendant.  Anderson said he would talk to Green and Randy Coleman (African-American), the area Senior Vice President, and let him know.  Plaintiff testified that he told Anderson that he would need at least $52,000 in salary in order to come back, and that Anderson responded "Don't worry about salary, we'll take care of you".  Plaintiff's Deposition, pp. 147-148.  Plaintiff also told Anderson he wanted to be assigned to the new restaurant the Defendant was opening in Rincon, Georgia.  Id.

On or about August 5, 2011, Plaintiff had a meeting with Anderson, Green and Coleman (all three African-Americans).  Plaintiff was told he could be rehired by the Defendant as a Manager Trainee at an annual salary of $35,000.  Plaintiff accepted this offer.  Plaintiff's Deposition, pp. 156-158.  See also, Plaintiff's Deposition, Exhibit 12.  Plaintiff testified that while his salary only equaled $10.70 per hour, there were two other Manager Trainees at that time who were being paid $11.84 per hour and $12.82 per hour, respectively.  However, these other two Manager Trainees, Derick Murray and Sandra Barrett, were both also African-American.  Plaintiff's Deposition, pp. 159-161.  Plaintiff also did know whether either of these other two Manager Trainees had ever quit and then returned to the company.  Id.

After he was rehired, Plaintiff initially began working at the Defendant's Hardeeville, Ridgeland, and Garden City restaurants.  Plaintiff's Deposition, pp. 162-163.  On September 4, 2011,



Anderson told him that he would not be able to make the kind of money he wanted to make in Rincon, and that he would not be moving to the Rincon location. Anderson told Plaintiff that he would only be able to make $38,000 a year at the Rincon restaurant, and that he could make more elsewhere. <u>Plaintiff's Deposition</u>, pp. 163-164. Subsequently, on September 15, 2011, Anderson and Green told Plaintiff that he was being assigned to the Garden City restaurant as Unit Manager at a salary of $43,000. <u>Plaintiff's Deposition</u>, pp. 166-167. However, Plaintiff refused to accept this assignment because that "wasn't enough money for [him] to operate that Unit . . . .". <u>Plaintiff's Deposition</u>, p. 168. Anderson then terminated Plaintiff's employment for insubordination and for refusing to accept the assignment to the Garden City location. <u>Plaintiff's Deposition</u>, pp. 168-169; <u>Anderson Deposition</u>, pp. 225-226.; <u>see</u> <u>also</u> <u>Plaintiff's Deposition</u>, Exhibit 13.

On October 20, 2011, Plaintiff filed an Administrative Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), in which he asserted claims for race discrimination and unlawful retaliation[4] on the grounds that he was denied the salary he was promised by Anderson when he was rehired on August 5, 2011, by Anderson failing to assign him to the store in Rincon, Georgia as promised, and for being discharged because he would not accept the Store Manager position in Garden City, South Carolina. <u>See</u> <u>Plaintiff's Deposition</u>, Exhibit 14. After receiving a Right to Sue letter, Plaintiff filed this lawsuit in United States District Court alleging that he was treated disparately and subjected to a hostile work environment in violation of Title VII and the South Carolina Human Affairs Law, S.C. Code Ann. § 1-13-10, <u>et</u> <u>seq</u>. (First Cause of Action), that the Defendant's conduct also violated Plaintiff rights under 42 U.S.C. § 1981 (Second Cause of

---

[4]Plaintiff also checked the box for sex discrimination on his charge of discrimination. <u>Plaintiff's Deposition</u>, Exhibit 14. However, Plaintiff has not asserted a claim for sex discrimination in this lawsuit.



Action), that the cited conduct occurred after he had opposed and complained about discrimination and therefore constituted unlawful retaliation under Title VII and § 1981 (Third Cause of Action), and that he had a contract of employment with the Defendant and that the Defendant violated that contract by failing to follow the equal employment policies and progressive disciplinary schemes set forth in his employment contract (Fourth Cause of Action).

**Discussion**

The Defendant has moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendant is entitled to summary judgment in this case.

**I.**

**(Disparate Treatment Claim)**

In his disparate treatment claim, Plaintiff asserts that he was discriminated against on

7

account of his race in violation of Title VII, § 1981,[5] and the South Carolina Human Affairs Law

(SCHAL),[6] when he was subjected to discriminatory assignments and terminated from his position.

See generally, Plaintiff's First and Second Causes of Action.[7]   Plaintiff's claim requires proof of

intentional discrimination, either by direct evidence or by the structured procedures set forth in

---

[5]To pursue a claim under § 1981, Plaintiff must prove that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [his] race, and that the discrimination interfered with a contractual interest." Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006). While the Defendant disputes that Plaintiff had a contract for employment; see discussion in Section IV, infra; even if the Court finds that Plaintiff was an at-will employee, he can still assert a claim under § 1981. See Sellers v. South Carolina Autism Soc., Inc., 866 F.Supp. 2d 692, 695-698 (D.S.C. 2012) [Concluding that "at-will employment in South Carolina is contractual in nature and may support a claim under Section 1981."].

[6]Although SCHAL is listed by Plaintiff in his First Cause of Action as being one of the statues under which he is pursuing his claim, neither party addresses Plaintiff's discrimination claim separately under a SCHAL analysis.   In any event, with respect to the merits of Plaintiff's discrimination claims, the analytical framework for considering these claims under SCHAL is the same as that for Title VII.  See Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C.1982); Tyndall v. National Education Centers, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); cf. Cromer v. Greenwood Com'n of Public Works, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.]; Robinson v. BGM America, Inc., ___ F.Supp. 2d ___, 2013 WL 4042187 at * 22 (D.S.C. Aug. 8, 2013).  The only difference may lie in the extent to which any relief provided under SCHAL can be obtained, as opposed to relief allowed under Title VII or § 1981, in so far as SCHAL requires that an action be commenced within one year from the day of the alleged violation, or within 120 days from the date an administrative charge is dismissed by the South Carolina Human Affairs Commission (SCHAC), whichever occurs earlier.  See S.C. Code Ann. § 1-13-90(d)(6).  Therefore, only conduct which occurred within these time periods may be used to support a claim under SCHAL.  Plaintiff alleges in the Complaint that he filed his administrative charge with both SCHAC and the EEOC; see Complaint, ¶ 11; but neither party discusses this issue any further.

[7]These Causes of Action also assert that Plaintiff was subjected to a hostile work environment, which is a separate claim from a disparate treatment claim, and is discussed herein in Section II, infra. Bailey v. Int'l. Paper, No. 11-3013, 2012 WL 405713 at * 3 (D.S.C. Feb. 8, 2012)[Finding that "Plaintiff cannot transform her separate and distinct claim for disparate treatment based on gender into a hostile work environment claim, unless the facts alleged meet the separate criteria for a hostile work environment claim . . . ."].

8



McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[8]  Plaintiff has not offered any direct evidence of race discrimination,[9] and the Defendant argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether any of the complained of employment actions occurred because of his race under the McDonnell Douglas proof scheme to survive summary judgment.[10]

---

[8]Although McDonnell Douglas is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute.  See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).  Therefore, the analysis set forth herein with respect to Plaintiff's claims under Title VII also applies to any claims Plaintiff has asserted under § 1981.  See also, n. 6 supra [Same standard for any claim under SCHAL].

[9]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996);  Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[10]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even though he has presented only circumstantial, or in-direct, evidence of discrimination.  See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); cf. Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. While Plaintiff references the mixed-motive theory on Page 20 of his brief, neither party discusses or analyzes Plaintiff's claim under a mixed-motive analysis. See Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005)(citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp. 2d 822, 836 n. 13 (D.Md 1999)[Declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).  In any event, even if this is a claim Plaintiff has intended to pursue, it is without merit.  To survive summary judgment, a Plaintiff asserting a "mixed-motive" claim must have evidence sufficient to create a genuine issue of fact that 1) the defendant took an adverse employment action against the plaintiff; and 2) plaintiff's race was a motivating factor for the employment action. Megivern v. Glacier Hills, Inc., No. 12-1330, 2013 WL 2097373, at * 16 (6th Cir. May 16, 2013); Westmoreland v. Prince George's County, Md., 876 F.Supp.2d 594, 610-611 (D.Ma. 2012). "[T]he mixed-motive framework forces Plaintiffs to prove only that a forbidden factor (continued...)



The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against him. Second, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of race discrimination, Plaintiff must show (1) that he is a member of a protected

---

[10](...continued)
- notwithstanding the presence of [other] permissible factors - caused the challenged conduct." Westmoreland, 876 F.Supp.2d at 612; cf. Taylor v. Virginia Union University, 193 F.3d 219, 232 (4th Cir. 1999)["The bonus for plaintiffs able to invoke the standard of liability applicable in mixed-motive cases is that proof by the employer that it would have reached the same determination without any discriminatory animus does not allow the employer to avoid liability altogether. Rather, such proof only limits the remedies available to the plaintiff."]; Mereish, 359 F.3d. at 339-340. However, for the reasons set forth in the body of this opinion, infra, Plaintiff has made no showing that race was a motivating factor for the employment actions at issue (assuming arguendo that they were even adverse actions). See discussion, infra. Therefore, his claims of disparate treatment would not survive even if considered under a mixed-motive analysis.



class; (2) that he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and (4) that other employees who were not members of his protected class were treated more favorably, that he was replaced [in the case of a discharge claim] by someone from outside of his protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996). It is undisputed that Plaintiff is a member of a protected class [African American], and that he was subjected to an adverse employment action when he was discharged. However, the Defendant argues that Plaintiff's job assignments do not constitute adverse employment actions, that he cannot show that he was adequately performing his job, nor is there any evidence that he was subjected to any adverse employment action under circumstances giving rise to an inference of unlawful discrimination.[11]

   With respect to whether Plaintiff was adequately performing his job, the evidence (considered in the light most favorable to the Plaintiff) shows that Plaintiff worked for the Defendant at its restaurant at the Savannah airport, following which he was transferred to the Defendant's Point South restaurant, where he continued to work until he resigned his employment in May 2011 due to

---

   [11]Defendant also correctly notes that Plaintiff's Title VII claim is limited to his period of employment between August and September 2011, because that is the only period of employment referenced by Plaintiff in his administrative charge. See Plaintiff's Deposition, Exhibit 14. See also, Chacko v. Patuxent Inst., 429 F.3d 505, 511 (4th Cir. 2005)[Claims not raised in timely administrative charge are barred]; see also Note 6 [Noting time requirements for SCHAL claim]. However, Plaintiff's § 1981 claim can encompass alleged acts of discrimination going back four years. Holmes v. Marion School District One, No. 10-2221, 2011 WL 4548204, at * 2 (D.S.C. July 6, 2011); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383-385 (2004). .



complaints about how he was being treated. <u>Plaintiff's Deposition</u>, Exhibit 9. The District Manager for the district that included the Point South location, Suzanne Maloney, told Mark Anderson that she thought a lot of the Plaintiff and thought he could be a good store operator, and there is no indication of any evidence of poor job performance by Plaintiff during this period of time such that his employment was in any danger. <u>See</u> <u>Anderson Deposition</u>, p. 123. Further, even after Plaintiff resigned, the evidence shows that the Defendant was willing to take him back and make him a manager of a restaurant. <u>Plaintiff's Deposition</u>, pp. 147-148, 156-158. Plaintiff was in fact offered the position of Unit Manager (manager of the restaurant) at the Defendant's restaurant in Garden City South Carolina. <u>Plaintiff's Deposition</u>, pp. 166-167. Therefore, considered in the light most favorable to the Plaintiff, the evidence reflects that Plaintiff was adequately performing his job up to the time of his discharge. <u>See generally</u>, <u>Plaintiff's Deposition</u>, pp. 167-169. <u>Cf</u>. <u>Obico v. Mission Creek Sr. Community</u>, No. 11-3932, 2013 WL 622937 at * 5 (N.D.Cal. Feb. 15, 2013)[Finding that sufficient evidence existed that, up until the time of incident (which resulted the in Plaintiff's termination), Plaintiff performed his job satisfactorily]; <u>Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.</u>, 921 F.Supp.2d 470, 485 (D.Md. 2013)[Finding that Plaintiff was adequately performing her job for purposes of her prima facie case where she had consistently received strong performance evaluations up until the events culminating in her termination.]; <u>see</u> <u>Ennis v. National Ass'n of Business and Educational Radio, Inc.</u>, 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a <u>prima</u> <u>facie</u> case is flexible depending on the factual situation and the claim alleged].

However, Plaintiff does not dispute that after he was rehired in August 2011, he refused to accept the assignment as Unit Manager at the Garden City restaurant; <u>Plaintiff's</u>



Deposition, p. 168; and it goes without saying that refusing to follow your boss's instructions is a way for an employee to get themself fired.  While Plaintiff contends that he was justified in refusing this assignment, and that his resulting termination was an act of discrimination and/or retaliation; but see King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003)[On a motion for summary judgment, a Plaintiff's "own testimony . . . cannot establish a genuine issue as to whether [the Plaintiff] was meeting [the employer's] expectations."]; see also Beall v. Abbott Labs, 130 F.3d 614, 619 (4th Cir. 1997)[In considering whether a claimant was adequately performing their job, it is the perception of the decision maker which is relevant, not the self assessment of the claimant]; even if the Court were to assume for purposes of summary judgment that the evidence is sufficient to create an issue of fact as to whether Plaintiff was adequately performing his job at the time he was discharged, he has provided no evidence to show that he was subjected to any disciplinary action or was discharged because of his race.

First, there is no indication or inference of race discrimination in the evidence relating to Plaintiff's transfer from Savannah to Point South.[12]  Plaintiff himself conceded that this transfer

---

[12]Plaintiff's allegations concerning his treatment while at the Savannah Airport restaurant are discussed separately herein in Section II, infra, under a hostile work environment analysis, as that is how Plaintiff has framed that claim.  Plaintiff's treatment and complaints otherwise are examined only under the disparate treatment analysis set forth hereinabove.  See Kilby-Robb v. Spellings, 522 F.Supp.2d 148, 164 (D.D.C. 2007)["[A]lleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claim."]; Parker v. State, Dep't. of Public Safety, 11 F.Supp.2d 467, 475 (D.Del. 1998)["[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent.  Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address."]; see also Lester v. Natsios, 290 F.Supp. 2d 11, 33 (D.D.C. 2003)["Discrete acts constituting discrimination . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive" conduct].



was not any form of discipline or demotion,[13] that his pay remained the same, and that he had no problem being assigned to the Point South restaurant. Plaintiff's Deposition, pp. 104-105, 133.[14] Plaintiff had even told Anderson and Green that he was unhappy with his assignment to Savannah because of the distance it was from where he lived (even though the Defendant had provided him with moving expenses, which he did not use to relocate), and the Point South restaurant was near where he lived. Plaintiff's Deposition, pp. 94-95, 105. While Plaintiff notes that Leslie Carson, who is white, was made the Unit Manager at the Savannah restaurant, that is not in and of itself evidence of race discrimination. Carson had previous experience as a manager, while Plaintiff was at that time only a Manager Trainee. Further, it is clear from the evidence that Plaintiff did not *want* to be the manager in Savannah, that he was unhappy there, and that he was perfectly satisfied with his reassignment to Point South. Additionally, both of these assignments and transfers were approved and made by Anderson and Green, both of whom are African-Americans. Dungee v. Northeast Foods, Inc., 940 F.Supp. 682, 688 n. 3 (D.N.J. 1996) [that decisionmaker is member of plaintiff's own protected class "weakens any possible inference of discrimination"]. There is no inference of

---

[13]It was actually a *promotion*, since Plaintiff was only a manager trainee in Savannah, and when he was transferred to Point South, he was made the manager of that restaurant. See Plaintiff's Deposition, pp. 105, 131-132.

[14]Further, as Plaintiff concedes his job status and pay was not affected by this transfer (in fact, it was a promotion), this transfer was not even an "adverse employment action" for purposes of a disparate treatment claim. Cf. Lybarger v. Gates, No. 10-373, 2012 WL 1095915 at * 11 (N.D.Ohio Mar. 30, 2012)["Adverse employment actions are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"] (internal citations omitted); James, 368 F.3d at 376 [Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position] (citations omitted).

14



unlawful race discrimination in this evidence.

With respect to the treatment Plaintiff received at the Point South restaurant, Plaintiff has offered no evidence that Suzanne Maloney treated him disparately - she even complemented his work ability.  See Anderson Deposition, p. 123.  Rather, the employees Plaintiff complains about treating him poorly appear to have been other African-Americans working at that restaurant, who Plaintiff complains showed more deference to Maloney than they did to him.  However, Plaintiff fails to offer a cogent argument for why his treatment at the hands of these other African-Americans constituted race discrimination, as opposed to just bad relations or personal disagreements between these individuals (all of whom where of the same race).  Additionally, while listing a number of reasons in his letter resigning from this position for why he was resigning, Plaintiff did not himself reference racial discrimination as being a reason for his resignation.[15]  See Plaintiff's Deposition, Exhibit 9.  Cf. Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 (4th Cir. 2000) [affirming grant of summary judgment to the employer where the employee did not "show that...[the] problems were

_____

[15]Further, to the extent Plaintiff may now be trying to argue that the Defendant's conduct while he was at Point South forced him to retire; see Plaintiff's Brief, pp. 13-14; Plaintiff did not assert a constructive discharge claim with respect to his resignation.  See Complaint, see also Plaintiff's Deposition, Exhibit 14 [showing that plaintiff did not assert a constructive discharge claim in his administrative charge].  Even if he had, his testimony about how he was treated, discussed in more detail herein, supra and infra, standing alone is not sufficient evidence to establish a constructive discharge claim.  Garrett v. Hewlett Packard Co., 305 F.3d 1210, 1221 (10th Cir. 2002) ["Constructive discharge occurs 'when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign'....The bar is quite high in such cases: a plaintiff must show he had no other choice but to quit."]; see Matvia v. Bald Head Island Mgmt., 259 F.3d 261, 273 (4th Cir. 2001) [Denying a claim for constructive discharge and noting that "co-worker ostracism [and] denial of management position...would not have compelled the reasonable person to resign.  These incidents might have made the workplace less enjoyable for the reasonable person, but not intolerable."]; Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) ["Dissatisfaction with work assignments, feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."].



[racial] in nature"]; <u>Gairola v. Virginia Dep't of General Services</u>, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that her disfavorable treatment was the result of discrimination...."].[16]

With respect to when Plaintiff was rehired in August 2011, Plaintiff argues an inference of discrimination is shown because he was paid less money than he wanted to be paid and because he was not given the store manager position in Rincon, Georgia. However, Plaintiff is not entitled to be paid whatever he wants to be paid by a prospective employer. Further, there is no evidence that Plaintiff was ever offered $52,000 to return to the Defendant's employ (the amount Plaintiff testified he wanted),[17] and in fact Plaintiff testified that he accepted the Defendant's offer to return to the Defendant's employ at a salary of $35,000. <u>Plaintiff's Deposition</u>, pp. 156-158. In any event, this offer was extended to him after he had a meeting with Anderson, Green and Coleman about coming back to work for the Defendant. All three of these individuals are, like the Plaintiff, African-Americans, and Plaintiff has advanced no plausible argument for why these fellow African-Americans would have discriminated against him because he is an African-American. <u>Cf.</u> <u>Nichols</u>

───────────────

[16]In any event, the fact that Plaintiff did not get along with his subordinates and believed they disrespected him is not evidence of an adverse employment action for purposes of establishing a prima facie case. <u>Cf.</u> <u>Munday v. Waste Management of North America</u>, 126 F.3d 239, 243 (4th Cir. 1997)[yelling at employee and telling others to ignore or shun employee did not rise to level of adverse employment action], <u>cert.</u> <u>denied</u>, 522 U.S. 1116 (1998); <u>Bozeman v. Per-Se Technologies, Inc.</u>, 456 F.Supp.2d 1282, 1346 (N.D.Ga. 2006)[courts have generally held that shunning or ostracism by co-workers or supervisors is not enough to constitute an adverse employment action]; <u>see</u> <u>Geisler v. Folsom</u>, 735 F.2d 991, 994-996 (6th Cir. 1984) [no "adverse employment action" where evidence failed to establish any more than bad relations or between employees and/or employees and their supervisor].

[17]<u>See</u> <u>also</u>, discussion in Section IV, <u>infra</u>.

16



v. Caroline County Bd. of Educ., 123 F.Supp.2d 320, 327 (D.Md. 2000)[Plaintiff's contention that

supervisors subjected him to adverse employment actions "because I am who I am" insufficient to

establish [discriminatory] character to their disagreements and misunderstandings]; see also

Buhrmaster v. Overnight Transp. 61 F.3d 461, 464 (6th Cir. 1995) ["[A]n individual who is willing

to hire and promote a person of a certain class is unlikely to fire them simply because they are a

member of that class."], cert. denied, 516 U.S. 1078 (1996).

   Plaintiff's complaint about the salaries two other manager trainees were making, even

if assumed to be true for purposes of summary judgment, is also not evidence of race discrimination,

as both of these other two manager trainees were themselves also African-Americans; Plaintiff's

Deposition, pp. 159-161; while Plaintiff's complaint about not being sent to the Rincon restaurant

location also fails to raise an inference of discrimination, as there is nothing in the evidence to show

that the Defendant ever promised Plaintiff he would be the manager at that location. Rather, Plaintiff

had only requested that he be sent to that location.[18]  Further, the location where Plaintiff was sent

---

   [18]Furthermore, although Plaintiff argues McBride (the person who was sent to manage that location) was less experienced, Plaintiff had only been a Unit Manager at Point South for a short period of time before resigning (and a Manager Trainee before that ), while the record shows that McBride had previously been a manager of a jewelry store for 10 to 15 years, was from the area, and knew a lot of people in the area and a lot of people to help bring in business. Anderson Deposition, pp. 189-190. Plaintiff has offered no evidence to dispute this evidence from the Defendant. Further, although Plaintiff states that McBride only lasted three (3) to four (4) months as the manager at Rincon, that does not establish that her hiring constituted discrimination against the Plaintiff. Plaintiff has no evidence that he did not get the job because of his race, and even if McBride did not work out as a manager, that is again not evidence of discrimination. See Plaintiff's Brief, p. 13; Anderson Deposition, pp. 195-196. Cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); Colbert v. Tapella, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting Hairsine v. James, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)["[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment (continued...)



instead paid a substantially higher salary and, as before, the individuals who made the decision of where to send Plaintiff and at what salary were all themselves African-Americans. <u>Cf</u>. <u>Dungee</u>, 940 F.Supp. at 688 n. 3 [that decisionmaker is member of plaintiff's own protected class "weakens any possible inference of discrimination"].  There is no evidence of race discrimination in these facts. <u>United States v. Crosby</u>, 59 F.3d 1133, 1135 n. 4 (11th Cir. 1995) ["While we acknowledge that a...violation may occur even where a supervisor or decision-maker is of the same race as the alleged victim....we note that the district court found that there was no evidence that [the decision-maker] held members of his own race to a higher standard of conduct than members of another race."]; <u>Hawkins</u>, 203 F.3d at 281 [affirming grant of summary judgment to the employer where the employee did not "show that...[the] problems were [racial] in nature"]; <u>Gairola</u>, 753 F.2d at 1288, n. 4 [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that her disfavorable treatment was the result of discrimination...."].

Finally, when the decision was made to terminate Plaintiff's employment, there is no dispute in the evidence that Plaintiff did in fact engage in the conduct (insubordination and refusing to report to his assigned restaurant) which led to his termination.  Even if (as argued by the Plaintiff) the Defendant was wrong to have terminated him for this conduct (a finding which this Court does not make), that is not evidence of race discrimination.  <u>See</u> <u>Kariotis v. Navistar Intern. Transp. Corp.</u>, 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination.  Thus when an employee is discharged because of  an employer's honest

---

[18](...continued)
decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones."]).



mistake, federal anti-discrimination laws offer no protection."]; <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998); <u>cf.</u> <u>Rudolph</u>, 884 F.Supp. at 188 ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing <u>Turner</u>, 555 F.2d at 1257; <u>Colbert</u>, 677 F.Supp. 2d at 295 (quoting <u>Hairsine</u>, 517 F.Supp.2d at 308-309 ["[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones."].  Further, the decision to terminate Plaintiff's employment was made by Anderson, who is himself an African-American.  <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1471 (11th Cir. 1991) ["[I]t is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class as the plaintiff."].  Plaintiff has offered no evidence whatsoever to show that his being an African-American was the reason his African-American boss fired him.

Therefore, as Plaintiff has failed to establish the necessary elements of his disparate treatment prima facie case, his First and Second Causes of Action should be dismissed.  <u>Boden v. U.S. Amada Ltd.</u>, 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; <u>Rucker v. Greenville Co. Sheriff Dep't.</u>, No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion].



19

## II.

### (Hostile Work Environment Claim)

Plaintiff's complaints about having been subjected to a hostile work environment relate primarily to his working conditions while he was assigned to the Savannah Airport restaurant. <u>See generally</u>, <u>Complaint</u>, ¶ ¶ 29-33; <u>see generally</u>, <u>Plaintiff's Brief</u>, p. 7 (¶¶ 25-27), 11-12.[19] To avoid summary judgment on his hostile work environment claim, Plaintiff must have evidence sufficient to create a genuine issue of fact that 1) he was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on his race; 3) the conduct was sufficiently severe or pervasive to alter his condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to his employer. <u>EEOC v. Cent. Wholesalers, Inc.</u>, 573 F.3d 167, 175 (4th Cir. 2009); <u>Ocheltree v. Scollon Productions, Inc.</u>, 308 F.3d 351, 356 (4th Cir. 2002), <u>rehearing en banc</u>, 335 F.3d 325 (4th Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 1406 (2004); <u>Spicer v. Com.of Va. Dep't of Corrections</u>, 66 F.3d 705, 710 (4th Cir. 1995); <u>Brown v. Perry</u>, 184 F.3d 388, 393 (4th Cir. 1999); <u>Scott v. Health Net Federal Services, LLC</u>, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012).

The evidence, considered in the light most favorable to the Plaintiff, is that Plaintiff complained that he was being discriminated against by the staff at the Savannah Airport restaurant, and in particular Marc Thibodeau. <u>Anderson Deposition</u>, p. 130. Plaintiff had been advised that if he ever had a complaint about discrimination, he should call the Hotline, and when Plaintiff told

---

[19]Defendant also correctly notes in its Brief that Plaintiff did not assert a claim for hostile work environment as part of his Title VII administrative charge, which also only covered the period of his most recent employment by the Defendant from August 2011 forward. Therefore, with respect to any claim based on a racially hostile work environment, Plaintiff is limited to relief under § 1981. <u>See also</u> n. 6, <u>supra</u> [discussing parameters for any claim being asserted under SCHAL].



Anderson and Green that he felt that Thibodeau was discriminating against him based on his race, they immediately told him to call the Hotline.  <u>Id</u>., pp. 132-133; <u>see also</u> <u>Plaintiff's Deposition</u>, p. 85. Plaintiff did so, completed a questionnaire, and submitted the matter to the Defendant for investigation.  <u>See</u> <u>Plaintiff's Deposition</u>, Exhibit 6.  Plaintiff's complaints about how he was being treated at the Savannah Restaurant are set forth in this questionnaire.

Specifically, Plaintiff complained that the employees at Savannah "constantly talked about how much they liked Angie [the previous manager of that restaurant]", and that he felt like Thibodeau "conspired with associates in that restaurant to have [him] removed voluntarily or involuntarily".  Plaintiff complained that on his first day working at the restaurant, Thibodeau along with another employee gave him a lecture on how the restaurant was to be run, that he was told that all hiring was to be done by and through either Thibodeau or the other employee (Billie Joe Sykes), and that Thibodeau had basically said that he would be the one running the restaurant, not the Plaintiff.[20]  Plaintiff also complained about another manager trainee being transferred from the restaurant, and that on December 24, 2010 he had to "write up" two grill operators after telling them to stop talking and focus on their jobs.  Plaintiff further complains that a short time after that Thibodeau started cooking on the grill and yelled to the Plaintiff that he needed him on the grill, which Plaintiff thought was rude and disrespectful, and that he did not like the fact that Thibodeau was telling him how to work as a grill operator.  Plaintiff stated that he then left and called Anderson to complain that he was being discriminated against.

Plaintiff further relates how on December 26, 2010 there was confusion at the restaurant over the taking of orders, and that some of the employees became upset.  Plaintiff also

---

[20]Plaintiff was a Manager Trainee at the time.

21



states that he believed white and black customers were being treated differently. Plaintiff states that when he relayed his complaints to Anderson and Green and that he was having problems with the staff members there, they told him it was because they missed Angie. Plaintiff also states that almost every day the first shift register kept coming up "short", and that at one point Thibodeau implied that he [Plaintiff] was shorting the register and pocketing the money. Plaintiff stated that Angie called the week after Christmas to see how things were going and that he told her he thought "discrimination was taking place". Plaintiff then met with Green and Anderson the following day, and after discussing all of his grievances and also complaining about the length of his commute, Green told him that he was being watched, that they were looking at everything he did, asked him if he drank, and in general tried to intimidate him. Plaintiff stated that thereafter both Green and Anderson showed up on January 16, 2011, and announced that Leslie Carson was going to be the Unit Manager in Savannah, and that when Carson showed up to work on January 18, 2011 she was very "disrespectful" and "very unprofessional". See generally, Plaintiff's Deposition, Exhibit 6.

At his deposition, Plaintiff did not offer any real reason for why he believed his treatment in Savannah was because of his race, other than to say that most of the employees in Savannah were white. See generally, Plaintiff's Deposition, pp. 90-99. Notably, however, the evidence also shows that Carson had filed a complaint with the Defendant alleging that the Plaintiff threatened her with bodily harm, and Anderson testified that when he went over to the restaurant after this incident was reported to him, that Carson was crying and stated that Plaintiff had threatened her and scared her. Anderson Deposition, pp. 140-141. Anderson testified that he told Carson to report her complaint to the Hotline. Id., p. 143.

After careful review and consideration of this evidence in conjunction with the



applicable standards for evaluating a hostile work environment claim, the undersigned does not find that the evidence presented in this case is sufficient to give rise to a genuine issue of fact as to whether the Plaintiff was subjected to a racially hostile work environment.  First, there is no evidence, other than Plaintiff's own self serving and conclusory inferences and suppositions, that race had anything to do with the events to which Plaintiff testified.  There is no evidence of any racial comments or statements being made by Thibodeau or any of the other employees at the restaurant, or of any racial animus on the part of these employees.  Cf. Nichols, 123 F.Supp.2d at 327 [Plaintiff's contention that supervisors subjected him to adverse employment actions "because I am who I am" insufficient to establish [discriminatory] character to their disagreements and misunderstandings]. Further, while Plaintiff's testimony and accompanying written statement to the Defendant sets forth how he did not like the way Thibodeau instructed him on how to do his job as well as other complaints about how other employees acted on the job, Defendant correctly notes that Plaintiff has not presented any evidence to show that Thibodeau or anyone else ever made any racially explicit comments, jokes or remarks, or ever made any reference to race during any of these events.

The incidents where Plaintiff describes Thibodeau giving him work to do or instructing him on how to do work, even if rudely done or presented in a manner offensive to the Plaintiff, do not by themselves constitute evidence to support a hostile work environment claim.  See Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994), cert. denied, 516 U.S. 826 (1995)["general harassment if not [based on a protected criteria] is not actionable"]; Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) [Without a showing that the reasons for his alleged mistreatment were discriminatory,  Plaintiff cannot establish a prima facie case for relief].  As for the incident where, Plaintiff alleges, employees at the restaurant were



not properly performing their jobs and he had to file a report on them after they did not do what Plaintiff instructed them to do, even if this event occurred, such conduct does not establish a hostile work environment claim, even if it was otherwise possible to infer a racial component to this conduct. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 768 (1998) (quoting Snell v. Suffolk City, 782 F.2d 1094, 1103 (2d Cir. 1986) ["To establish a hostile atmosphere, . . . . Plaintiffs must prove more than a few isolated incidents of [inappropriate conduct."]] (Thomas, dissenting); Hall v. Interstate Brands Corp., 395 Fed.Appx. 519, 523 (10th Cir. 2010)[Court dismissed claim of hostile work environment where Plaintiff only alleged limited, isolated incidents of inappropriate conduct]; see also Hopkins v. Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir. 1996) ["Title VII was not designed to create a federal remedy for all offensive language and conduct in the work place."]. With respect to the incident involving Carson, it was the *Plaintiff* who was alleged to have been the harasser in that incident, not Carson, while with respect to any conduct attributable to Anderson or Green, both of these individuals are fellow African-Americans, and Plaintiff has offered no rationale for why these two individuals would have subjected Plaintiff to unwelcome conduct in a work related setting because Plaintiff is also black.

In sum, Plaintiff has failed to submit evidence sufficient to create an issue of fact that the conduct he complains of was based on his race. Causey v. Balog, 162 F.3d 795, 801-802 (4th Cir. 1998)[Affirming summary judgment wherein employee failed to show that his employers alleged mistreatment was based on his race]. While Plaintiff has testified that he believed he was treated harshly because of his race, Plaintiff's own self-interested statements as to what he believed or perceived are not sufficient evidence to maintain this claim. McNairn v. Sullivan, 929 F.2d 974 (4th Cir. 1991); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); Komel v. Jewel Cos., 874 F.2d 472,



475 (7th Cir. 1989). Hence, even if the Court were to find for purposes of summary judgment that Plaintiff's work environment during the relevant time period was sufficiently severe or pervasive to alter his condition of employment and to create an abusive work environment, his hostile work environment claim still fails because he has not presented any evidence whatsoever to show that the conduct complained of was based on a racial animus. Norris v. City of Anderson, 125 F.Supp.2d 759, 769 (D.S.C. 2000) ["Since Plaintiff's allegation contains no [conduct prohibited by Title VII], it cannot be used to support his hostile work environment claim"].

Since Plaintiff has failed to satisfy his burden of proof with respect to this cause of action, this claim should be dismissed. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)[A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."].; Causey, 162 F.3d at 802 [conclusory statements, without specific evidentiary support, do not support a claim for discrimination].

### III.

### (Retaliation Claim)

Plaintiff alleges in his Third Cause of Action that, after he utilized the Defendant's EEO complaint procedure and opposed alleged unlawful conduct, he was subjected to negative employment actions including prejudicial assignments to less desirable stores and eventual termination. Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

It shall be an unlawful practice for an employer to discriminate against



25

any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

Here, it is undisputed that Plaintiff engaged in protected activity when he complained to Anderson about his treatment in Savannah, and that he was subjected to an adverse employment action when he was terminated. For purposes of summary judgment, there is also sufficient evidence (considered in the light most favorable to the Plaintiff) that his transfer from Savannah to Point South was a result of his having complained about his allegedly discriminatory treatment in Savannah to

26



establish a causal connection between those events.[21]  Cf. Hunt-Golliday v. Metropolitan Water

Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious

timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Pantoja v.

American NTN Bearing Mfg. Corp., 495 F.3d 840, 850 (7th Cir. 2007) [Timing was "suspicious

enough to suffice to support [ ] prima facie case."]; Texas Dep't of Community Affairs, 450 U.S. at

253 [the burden of establishing a prima facie case is not onerous]; but see Palermo v. Clinton, No.

11-1958, 2012 WL 169125 at * 2 (7th Cir. Jan. 20, 2012)[Suspicious timing alone generally not

enough to create a triable issue retaliation case].

        However, the evidence is also sufficient to set forth a legitimate, non-discriminatory

reason for the actions taken by the Defendant.  As previously discussed herein, supra, the Defendant's

evidence reflects that Plaintiff was transferred to Point South to be closer to where he lived after

Plaintiff complained about having to commute to Savannah and because Plaintiff did not like the

working conditions or the people he was working with in Savannah, and that with respect to

Plaintiff's discharge, he was discharged after he refused to report to his job assignment.  This

evidence is sufficient to establish a legitimate, non-discriminatory reason for the Defendant's actions.

See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of

---

[21]While this transfer may not have been an "adverse employment actions" for purposes of a
disparate treatment claim; see discussion, supra; such action, even if it did not result in a demotion
or negative change in pay status, could nevertheless be an "adverse employment action" for purposes
of a retaliation claim.  See Burlington Northern and Santa Fe Railroad Co. v. White, 548 U.S. 53, 68
(2006)[Plaintiff alleging retaliation need show only that the employer did something that would likely
deter a reasonable individual in the Plaintiff's circumstances from protesting what he perceived to
be unlawful discrimination]; Boese v. Fort Hays State University, 814 F.Supp.2d 1138, 1149 (D.Kan.
Apr. 28, 2011)["Whether a transfer constitutes a materially adverse action sufficient to sustain a Title
VII retaliation claim is determined on a case-by-case basis and 'should be judged from the perspective
of a reasonable person in the plaintiff's position, considering all the circumstances.'"] (quoting
Burlington Northern, 548 U.S. at 71).



establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion].

Therefore, Plaintiff must present evidence of pretext in the making of these decisions in order to

avoid summary judgment on his retaliation claim.

In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to

retaliate against him because of his having engaged in protected activity, he would not have been

subjected to the employment actions at issue.[22] <u>EEOC</u>, 955 F.2d at 941; <u>Conkwright</u>, 933 F.2d at

234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole...

must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by

[retaliatory animus].'" <u>LeBlanc</u>, 6 F.3d at 843 (citing <u>Goldman</u>, 985 F.2d at 1117 (quoting <u>Connell</u>,

924 F.2d at  1172, n. 3); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141-143

(2000.  Plaintiff has failed to present any such evidence.

With respect to his discharge, Plaintiff concedes that he in fact refused to report to the

Garden City restaurant as instructed by his employer after he was hired.  There is no evidence

whatsoever tying this event to Plaintiff having complained to Anderson the previous year (during an

earlier period of employment with the Defendant) about alleged discriminatory treatment at the

Savannah restaurant.  <u>See</u> <u>Cecilino v. Allstate Ins. Co.</u>, 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a

simple showing that an adverse action occurred after a complaint of discrimination 'is not even

enough to make out a prima facie case of retaliation, let alone to survive a motion for summary

---

[22]In his brief Plaintiff argues that retaliation claims under § 1981 do not require the "but for" causation standard.  However, that argument is without merit.  <u>Cf.</u> <u>See</u>, e.g., <u>Alexander v. City of New York</u>, ___ F.Supp. 2d ___, 2013 WL 3943496 at * 9 (E.D.N.Y. July 23, 2013); <u>Ray v. Ropes & Gray LLP</u>, ___ F.Supp. 2d ___, 2013 WL 4407099 at * * 8-9 (D. Mass. Aug. 16, 2013); <u>Stewart v. Sodexo Remote Site P'ship</u>, No. 11-2596, 2013 WL 4519332 at * 10 (E.D. La. Aug. 23, 2013); <u>Potts v. UPS</u>, No. 11-2407, 2013 WL 4483080 at * * 9-10 (N.D. Tex. Aug. 22, 2013); <u>see</u> <u>also</u> <u>University of Texas Southwestern Medical Center v. Nassar</u>, 133 S.Ct. 2517, 2534 (2013).



judgment.']. Indeed, the evidence shows that the Defendant was willing to (and did) rehire Plaintiff even after he had quit his job at the Defendant's Point South restaurant, which was *after* Plaintiff worked in Savannah and had made his complaints.

While Plaintiff also claims that his termination was the result of him objecting to a white female obtaining the manager position in the Rincon, Georgia store, the position he wanted, the evidence shows that Plaintiff only learned that he was not being assigned to the Rincon restaurant when he was told he was being assigned to the Garden City restaurant. <u>Plaintiff's Deposition</u>, p. 166. Hence, even assuming Plaintiff complained to the Defendant about a white person being assigned to be the manager in Rincon, and that that activity was protected activity for purposes of a retaliation claim, Plaintiff did not engage in that conduct until *after* he had already been assigned to Garden City. Therefore, his failure to receive that position could not have been retaliatory based on that complaint and, as previously noted, Plaintiff does not dispute that he thereafter refused to report to the Garden City assignment, which led to his dismissal. There is no inference of unlawful retaliatory conduct on the part of the Defendant in this evidence. <u>Ross</u>, 759 F.2d at 366 ["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct."].

As for Plaintiff's transfer to Point South from Savannah, there is also no evidence that this was a retaliatory act. To the contrary, it is readily apparent from the evidence before this Court that Plaintiff did not want to work in Savannah any longer, he did not like the commute, and he did not like the people there. <u>See</u> <u>Cecilino</u>., 908 F.Supp. at 532 [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.']. Further, Plaintiff's transfer to



Point South was a *promotion*, as he was placed in a Unit Manager status which also made him eligible for bonuses, a status he did not have as a manager trainee in Savannah. <u>See</u> <u>also</u> <u>Anderson Deposition</u>, pp. 104-105. Therefore, no retaliatory animus is shown in this evidence. Plaintiff's retaliation cause of action should be dismissed.

## IV.

### (Breach of Contract Claim)

Plaintiff's final claim is that he had a contract of employment with the Defendant, which included a requirement that the Defendant provide equal employment opportunity to employees and a mandatory progressive disciplinary procedure, and that the Defendant violated this contract by engaging in the allegedly discriminatory conduct set forth in the Complaint and in terminating him from his job. <u>See</u> <u>Complaint</u>, ¶¶ 92-99. Plaintiff further alleges that he had an oral contract to be the manager of the new Georgia store at a salary of $52,000, and that the Defendant breached that contract by assigning Plaintiff at a lesser salary to a less desirable, less profitable, and older store when he was re-employed. <u>Id.</u>, ¶¶ 100-102.

The necessary elements of a contract are an offer, acceptance, and valuable consideration. <u>Roberts v. Gaskins</u>, 486 S.E.2d 771, 773 (S.C. 1997), citing <u>Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co.</u>, 437 S.E.2d 122 (S.C. Ct. App. 1993). Under South Carolina law, in order to prevail on a breach of contract claim, the Plaintiff bears the burden of establishing the existence and terms of the contract, the Defendant's breach of one or more of the contractual terms, and damages resulting from the breach. <u>Taylor v. Cummins Atlantic, Inc.</u>, 852 F.Supp. 1279, 1286 (D.S.C. 1994), citing <u>Fuller v. Eastern Fire & Cas.Ins.Co.</u>, 124 S.E.2d 602, 610 (S.C. 1962).



30

With respect to employment, however, there is a presumption in South Carolina that employees are at-will, and therefore in order to survive a motion for summary judgment on a claim for breach of a contract of employment, a Plaintiff must also present "sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship." Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011) [Rule 12 motion case] ["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'"], quoting Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment'].

   With respect to Plaintiff's contract claim covering his initial period of employment, this claim is based on the allegations of the Complaint that the Defendant's employee handbook created a contract between him and the Defendant. See Complaint, ¶¶ 92-99. Plaintiff is correct that an employer can alter an employee's at-will status through mandatory language in a handbook. Cf. Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C.Ct.App. 2006). However, as noted by the Defendant in its reply brief, Plaintiff only argues in his brief opposing summary judgment that he had an oral contract with the Defendant to come back and work for the Defendant at the new Georgia restaurant, and does not make any arguments or point to any evidence to support a claim that he had a contract of employment with the Defendant prior to that time. See Plaintiff's Response Brief, pp. 22-24. Further, at his deposition Plaintiff testified that his breach of contract claim was only based on an alleged oral contract between the Plaintiff and Anderson about Plaintiff going to the new



Georgia restaurant.  See Plaintiff's Deposition, p. 203.  As such, Defendant argues, and the undersigned agrees, that it is entitled to summary judgment on any contract claim Plaintiff had originally intended to assert arising from his period of employment with the Defendant prior to his re-hiring in August/September 2011.  Cf. Brand v. North Carolina Dep't. of Crime Control & Pub. Safety, 352 F.Supp.2d 606, 618 (M.D.N.C. 2004)[Holding that employee waived discrimination claim by failing to address that claim in response to employer's motion for summary judgment]; see also Baber, 977 F.2d at 874-875 [Once a moving party presents evidence that judgment on the pleadings is appropriate, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial].

In any event, Plaintiff has not produced a copy of any handbook in support of this claim, has not identified any specific language or provisions from any handbook to support this claim, and testified at his deposition that he does not even remember having received a handbook.  Plaintiff Deposition, p. 63; see Karges v. Charleston County Sheriff's Office, No. 08-2163, 2010 WL 1303455 at * 10 (D.S.C. Mar. 5, 2010)[Recommending dismissal on summary judgment where Plaintiff asserted that a handbook altered his employment-at-will status, but failed to introduce the handbook or reference any evidence to establish the necessary elements of a handbook claim], adopted by, 2010 WL 1409435 (D.S.C. Mar. 31, 2010); House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim].  Therefore, any breach of contract claim relating to anything other than the alleged oral contract between Plaintiff and Anderson as discussed hereinbelow, infra, to the extent Plaintiff has intended to assert any such claim, should be dismissed.

With respect to Plaintiff having resumed employment with the Defendant in the late summer/early fall of 2011, Plaintiff testified that he spoke with Anderson about coming back to work



32

for the Defendant, and that Anderson said he would talk to Green and Coleman and let him know. Plaintiff testified that he asked to be assigned to the new restaurant the Defendant was opening in Rincon, Georgia.  Plaintiff also request a salary of $52,000 if he came back, and Plaintiff testified that Anderson responded to this statement by saying "don't worry about salary, we will take care of you". <u>Plaintiff's Deposition</u>, pp. 147-148.  Plaintiff testified that he then subsequently had a meeting with Anderson, Green and Coleman on August 5, 2011, at which Plaintiff was offered a job as a manager trainee at an annual salary of $35,000.  Plaintiff accepted this offer.  Plaintiff also testified that Anderson told him he was being placed in a trainee status until the Rincon store opened; <u>Plaintiff's Deposition</u>, pp. 156-158; <u>see also</u>, <u>Plaintiff's Deposition</u>, Exhibit 12; and after Plaintiff was rehired, he began working at the Defendant's Hardeeville, Ridgeland, and Garden City restaurants.  <u>Plaintiff's Deposition</u>, pp. 163-164.  However, on September 4, 2011, Anderson told Plaintiff that he would not be moving to the Rincon location, and on September 15, 2011, Anderson and Green told him that he was being assigned to the Garden City restaurant as Unit Manager at a salary of $43,000.  <u>Plaintiff's Deposition</u>, pp. 163-164, 166-167.  When Plaintiff refused to accept this assignment, he was fired.

Nothing in this evidence, even when considered in the light most favorable to the Plaintiff, creates a genuine issue of fact as to whether Plaintiff had a "contract" of employment with the Defendant to work at the Defendant's new Rincon, Georgia store for a salary of $52, 000.  While at-will employment can be altered by an oral promise, "to be binding an oral offer must be definite in its terms", and South Carolina Courts are reluctant to transform vague assurances into binding and contractual promises.  <u>Walton v. Lockheed Martin Aircraft Center</u>, No. 09-462, 2010 WL 3951524, at * 9 (D.S.C. Aug. 30, 2010), <u>adopted by</u>, 2010 WL 3951512 (D.S.C. Oct. 7, 2010), aff'd. 407 App. 764 (4th Cir. Jan. 18, 2011); <u>Chauncey v. Life Cycle Engineering, Inc.</u>, No. 12-968, 2013 WL



5468298, at * 27 (D.S.C. July 29, 2013), <u>adopted in part and rejected in part on other grounds, 2013</u> <u>WL 548237 (D.S.C. Sept. 30, 2013).</u>

Plaintiff's testimony does not establish that Anderson ever promised or guaranteed him a salary of $52,000, or that there was any contractually enforceable obligation on the part of the Defendant to make Plaintiff the Unit Manager at the Rincon, Georgia restaurant. <u>See</u> <u>Wadford v.</u> <u>Hartford Fire Ins. Co.</u>, No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]. While Plaintiff argues that "[t]he evidence reveals that [Plaintiff's desire to go to Rincon] was discussed and that [Plaintiff] did in fact return to work expecting and looking forward to working at the Rincon store", even assuming this representation be true for purposes of summary judgment, any such desire or expectation does not mean that Plaintiff had a binding and enforceable oral contract with the Defendant to be given the Unit Manager position in Rincon at a salary of $52,000. <u>Cf.</u> <u>Layton v. MMM Design Group</u>, 32 Fed. Appx. 677, 680 (45h Cir. Apr. 2, 2002) [Finding an offer which included a salary figure remained "at will" because did not otherwise state an employment term or indicate that the relationship could be terminated only for cause]. Indeed, although Plaintiff testified that Anderson had offered him an oral contract to return to work for the Defendant at the Rincon restaurant at $52,000 per year, he conceded that he did not have any evidence to support this claim; <u>Plaintiff's Deposition</u>, pp. 203, 206-207; while Plaintiff's own testimony as to the circumstances of his re-hiring does not otherwise support such a claim. <u>Plaintiff's Deposition</u>, pp



147-148, 156-158, 163-164, 166-167.  <u>See</u> <u>Taylor</u>, 854 F.Supp. at 1286 [Plaintiff bears the burden of establishing the existence and terms of a contract].  Therefore, this claim is without merit and should be dismissed.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)[There must be evidence in which a jury could reasonably find for the plaintiff]; <u>House</u>, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim].

### <u>Conclusion</u>

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted,** and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 15, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

36
